# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

NO. 09-1813

ANDREA M. MCNAIR, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 25, 2011                                          Decided November 18, 2011)

*Ronald L. Smith*, with whom *Virginia L. Carron* and *Troy E. Grabow* were on the brief, all of Washington, D.C., for the appellant.

*Kristen D. King-Holland*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and MOORMAN, *Judges*.

KASOLD, *Chief Judge*:  Veteran Andrea M. McNair appeals through counsel that part of a January 22, 2009, decision of the Board of Veterans' Appeals (Board) that denied disability compensation for neuralgia[1] of the breast or focal nerve damage (hereinafter "neuralgia") as a result of surgery she underwent at a VA facility in June 1998.  On appeal, Ms. McNair argues, inter alia, that the Board erred when it found that she was advised adequately of the potential adverse effects of her surgery and therefore that her consent to the surgery was informed.  Ms. McNair seeks reversal of the Board's decision.  The Secretary disputes Ms. McNair's contentions.

The case was referred to a panel of the Court to address the evidentiary effect of a signed generic consent form when the patient signing the form asserts that she was not informed of a foreseeable risk of surgery.  For the reasons stated below, we hold that the presumption of regularity does not apply to the scope of the information provided to a patient by a doctor with regard to the

---

[1] "Neuralgia" is pain extending along the course of one or more nerves.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1281 (31st ed. 2007) [hereinafter "DORLAND'S"].

risks involved with any particular treatment. We further hold that a failure to provide information to a patient about a potential adverse effect does not defeat a finding of informed consent if a reasonable person faced with similar circumstances would have proceeded with the treatment.

Because additional findings of fact are necessary to apply these holdings, the Board's decision will be set aside and the matters remanded for further adjudication.

## I. FACTS

Ms. McNair served on active duty in the U.S. Army from August 1993 to May 1995. Prior to her service – in August 1989 – Ms. McNair underwent breast reduction surgery. She did not report any complications as a result of that procedure. On June 2, 1998, she underwent bilateral reduction mammoplasty at a VA hospital.[2] Ms. McNair and her doctor signed an authorization for medical procedures form that reflects that she was advised as to the nature of the surgery, attendant risks involved, and expected results, but the form is general in nature and does not state the specific attendant risks that were discussed. Record (R.) at 448. In addition, a contemporaneously entered treatment note states that this was Ms. McNair's second breast-reduction surgery, which was required after Ms. McNair developed macromastia[3] subsequent to her original surgery, with symptoms including neck, back, and shoulder pain, significant "bra strapping," and decreased physical activity due to the size and positions of the breasts. R. at 442. Another treatment note detailed the surgeon's conversation with Ms. McNair regarding the risks and tradeoffs of the surgery:

> The nature of the operation including the tradeoff b/t scar or [illegible] of excess skin, adipose and glandular tissue were discussed in great detail including the potential complications of infection, hematoma, partial or complete NAC [nipple-areolar complex] graft loss as well as irregular pigmentation during the healing [illegible]. The pt acknowledged the above and instruct[ed] to proceed.

R. at 452.

In November 1998, Ms. McNair filed a claim under 38 U.S.C. § 1151 for continual neuralgia resulting from breast reduction surgery. In a March 1999 rating decision, a VA regional office found

---

[2] A "mammoplasty" (or "mammaplasty") reduction is the plastic reconstruction of the breast to reduce size. DORLAND'S at 1116.

[3] "Macromastia" is oversize of the breasts. DORLAND'S at 1108.

2

that Ms. McNair was not entitled to such benefits because "[b]oth the private and VA examiner indicate that such pain from nerve regeneration after the elective surgery is an expected consequence of such surgery." R. at 435. Ms. McNair appealed that decision, stating that she did not experience pain after her first surgery and reiterating that she was not informed of the chance of this type of pain occurring. Since then, this matter has been the subject of several Board decisions, a joint motion for remand granted by this Court, and numerous VA medical examinations. Ms. McNair has contended throughout this time that she was not informed of the risk of neuralgia prior to her June 1998 surgery.

In the decision on appeal, the Board found that Ms. McNair suffers from an additional disability due to neuralgia that was incurred as a result of the June 1998 surgery. The Board further found that neuralgia was a foreseeable risk of surgery but that Ms. McNair was not entitled to disability compensation because (1) there was no evidence of negligence or similar instance of fault on the part of VA in furnishing surgical treatment, and (2) Ms. McNair provided informed consent for treatment. Regarding the informed consent finding, the Board found that there was substantial compliance with 38 C.F.R. § 17.32, the regulation governing the provision and documentation of consent to medical procedures such as surgery. The Board further found that (1) there is no VA regulatory requirement that every foreseeable risk be documented in the record, (2) to the extent the record does not document that neuralgic scar pain was a possible risk, this omission was a minor deviation from the requirements of § 17.32 that was immaterial under the circumstances of this case, and (3) "in this case a reasonable person could assume that the surgeon's detailed discussion addressing possible residual scarring includes associated neuralgic pain." R. at 13. This appeal followed.

## II. ARGUMENTS

Ms. McNair argues that none of the evidence in the record establishes that the specific risk of neuralgia was disclosed to her and that the only affirmative evidence of record on that point consists of her lay statements that she was not so informed – statements that she asserts were not weighed by the Board. She further argues that there is no support for the Board's finding that any failure to document neuralgia in the record was a minor and immaterial deviation under 38 C.F.R.

3

§ 3.361(d)(1)(ii). When questioned at oral argument, Ms. McNair clarified her position, and asserted that the regulation's reference to "minor" and "immaterial" deviations includes only minor mistakes in documenting the consent, such as ascribing the wrong date to an otherwise properly executed consent form. She also argued that this case is distinguishable from *Halcomb v. Shinseki*, 23 Vet.App. 234 (2009), because in that case the veteran did not provide any supporting evidence, "even [considering] his own lay statements," whereas here Ms. McNair consistently has stated that she was not advised that she might suffer from neuralgia as a result of her surgery.

The Secretary argues that the Board's findings of fact are not clearly erroneous because Ms. McNair signed a consent form in which she attested that she understood the nature of the proposed procedure, attendant risks involved, and the expected results. Because the form is congruent with VA regulatory and internal procedures, the Secretary cites to our decision in *Halcomb* and argues that it cannot be presumed that the risk of neuralgia was not discussed simply because it was not specifically recorded. As to Ms. McNair's contrary lay statements, the Secretary argues that the Board sufficiently addressed them when the Board found that the health care providers substantially complied with 38 C.F.R. § 17.32 and also that minor deviations from the requirements of § 17.32 that are immaterial will not defeat a finding of informed consent. In response to questioning at oral argument, the Secretary asserted that minor and immaterial deviations under § 3.361(d)(1)(ii) include a failure to disclose a risk that, had it been known to a reasonable person in Ms. McNair's circumstances, would not have deterred a reasonable person from undergoing surgery. Additionally, in response to questioning, the Secretary argued that the presumption of regularity applied to the facts of this case and Ms. McNair's statements alone were insufficient to rebut it.

### III. DISCUSSION

The law authorizes VA compensation for disabilities arising from, inter alia, negligently provided VA medical or surgical treatment. 38 U.S.C. § 1151. The implementing VA regulation provides that negligence is established when the VA-provided treatment is the proximate cause of a disability and, inter alia, the treatment was provided without informed consent. 38 C.F.R.

4

§ 3.361(c)(1), (d)(1)(ii) (2011);[4] *see also Halcomb*, 23 Vet.App. at 237-38 (explaining the regulatory framework in detail). To be informed, consent must be given freely after careful explanation of the course of the treatment to be provided, including, inter alia, the reasonably foreseeable risks associated with the treatment.[5] 38 C.F.R. §§ 17.32(c) (2011),[6] 3.361(c)(1), (d)(1)(ii) (referring to

[4] 38 C.F.R. § 3.361 states:

(c) Establishing the cause of additional disability or death. Claims based on additional disability or death due to hospital care, medical or surgical treatment, or examination must meet the causation requirements of this paragraph and paragraph (d)(1) . . . of this section . . . .

    (1) Actual causation required. To establish causation, the evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the veteran's additional disability or death. Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability or died does not establish cause.

    . . . .

(d) Establishing the proximate cause of additional disability or death. The proximate cause of disability or death is the action or event that directly caused the disability or death, as distinguished from a remote contributing cause.

    (1) Care, treatment or examination. To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a veteran's additional disability or death, it must be shown that the hospital care, medical or surgical treatment, or examination caused the veteran's additional disability or death (as explained in paragraph (c) of this section); and

        (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or

        (ii) VA furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent. To determine whether there was informed consent, VA will consider whether the health care providers substantially complied with the requirements of § 17.32 of this chapter. Minor deviations from the requirement of § 17.32 of this chapter that are immaterial under the circumstances of a case will not defeat a finding of informed consent. Consent may be express (i.e., given orally or in writing) or implied under the circumstances specified in § 17.32(b) of this chapter, as in emergency situations.

    [5] The VA regulation is consistent with the generally accepted rule that a physician must provide the patient with enough information to enable the patient's informed choice whether to undergo treatment, *Canterbury v. Spence*, 464 F.2d 772, 786 (D.C. Cir. 1972) (adopting the patient-perspective duty), which, in turn, is premised on the principle that a person "has a right to determine what shall be done with his own body," *Schloendorff v. Soc'y of N.Y. Hosp.*, 105 N.E. 92 (N.Y. 1914) (Cardozo, J.).

    [6] 38 C.F.R. § 17.32(c) states:
General requirements for informed consent. Informed consent is the freely given consent that follows a careful explanation by the practitioner to the patient or the patient's surrogate of the proposed diagnostic or therapeutic

§ 17.32).

Additionally, 38 C.F.R. § 17.32(d) provides that "[t]he informed consent process must be appropriately documented in the health record." The Secretary determined that a signed, generic consent form satisfies this documentation requirement, and this determination was upheld in *Halcomb*, *supra*. Specifically left unaddressed in *Halcomb*, however, is the evidentiary effect of such a generic consent form when the scope of the advice provided to a patient-turned-claimant is contested by the claimant. 23 Vet.App. at 239-41 (rejecting the argument that use of the generic consent form established negligence per se because it did not list the foreseeable risks attendant with the treatment, and noting that the appellant had not presented any evidence – not even his own statement – that consent was not informed).

## A. Presumption of Regularity

There is a presumption that public officers perform their official duties correctly, fairly, in good faith, and in accordance with law and governing regulations. *Marsh v. Nicholson*, 19 Vet.App. 381, 385 (2005); *see also Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (Fed. Cir. 2009) (applying the presumption of regularity to the competence of VA examiners). The presumption applies with equal force whether its application favors the Government or the individual seeking disability compensation from the Government. *Woods v. Gober*, 14 Vet.App. 214, 218 (2000); *cf. United States v. Chem. Found. Inc.*, 272 U.S. 1 (1926) (rejecting the Government's claim that sales of intellectual property were induced fraudulently because United States officers were presumed to be aware of the facts when the transactions were made absent clear evidence to the contrary). Whether the presumption of regularity attaches to the public actions of a public official is a question of law that the Court reviews de novo. *Marsh*, 19 Vet.App. at 386.

Although Ms. McNair contended at oral argument that the presumption of regularity applies only to ministerial acts, the presumption is not so limited. *Rizzo*, 580 F.3d at 1292 (noting that

procedure or course of treatment. The practitioner, who has primary responsibility for the patient or who will perform the particular procedure or provide the treatment, must explain in language understandable to the patient or surrogate the nature of a proposed procedure or treatment; the expected benefits; reasonably foreseeable associated risks, complications or side effects; reasonable and available alternatives; and anticipated results if nothing is done. The patient or surrogate must be given the opportunity to ask questions, to indicate comprehension of the information provided, and to grant permission freely without coercion. The practitioner must advise the patient or surrogate if the proposed treatment is novel or unorthodox. The patient or surrogate may withhold or revoke his or her consent at any time.

"nothing in this court's precedent limits the presumption [of regularity] to procedural matters" and further stating that the doctrine "'allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary'" (quoting *Butler v. Principi*, 244 F.3d 1337, 1340 (Fed Cir. 2001))); *see also Sickels v. Shinseki*, 643 F.3d 1362 (Fed. Cir. 2011) (applying presumption of regularity to medical examiners' overall competence, including ability to understand instructions); *Rios v. Nicholson*, 490 F.3d 928, 930-31 (Fed. Cir. 2007) (applying presumption to the "known course of business" of the U.S. Postal Service).

Even though Ms. McNair's contention that the presumption of regularity only applies to ministerial acts is not the law, we do not agree with the Secretary that the presumption broadly applies to the scope of the advice and information given by a doctor to his patient. The issue before the Court is not resolved simply because the Board may presume the competence of VA medical professionals in general, or their ability to understand instructions, as were the circumstances, respectively, in *Rizzo* and *Sickles*, both *supra*. A VA doctor is a public official and completion of an informed consent form is required by VA regulation before certain treatment may be provided to a patient. However, it is the content of the advice and information provided to the patient in the face of a signed generic consent form that is contested here. As a matter of logic, such advice and information, which is predicated on the unique characteristics of each patient and each medical procedure, is not the "the product of a consistent, reliable procedure," which is the "root" of the presumption of regularity in our caselaw. *Posey v. Shinseki*, 23 Vet.App. 406, 410 (2010). It is precisely the diversity of patients, procedures, and circumstances that counsels against recognizing a presumption that a doctor has fully informed a particular patient about a particular consequence of a particular medical procedure simply because a generic consent form has been filled out properly.

When there is a dispute concerning what information a doctor provided to his patient, a factual issue is raised whether a generic consent form indicating the patient was advised of the risks of surgery is more probative than the claimant's statements that a specific risk of the surgery was not discussed. *See Salis v. United States*, 522 F. Supp. 989, 1000 (M.D. Pa. 1981) (noting that when there is a general consent form and contrary lay assertions, the issue becomes one of credibility for the trier of fact). Because such a finding has its basis in fact, it is a determination to be made by the Board in the first instance, based on all of the evidence in the record. *Roberts v. Shinseki*,

7

23 Vet.App. 416, 423 (2010) (Board has duty to weigh and analyze all the evidence of record (citing *Burger v. Brown*, 5 Vet.App. 340, 342 (1993))).

Here, contrary to Ms. McNair's contention, her statements are not the only evidence on the issue of informed consent. As with any relevant medical record, the signed consent form and treatment note are to be weighed by the Board, along with any other evidence in the record relevant to the issue.[7] *Savage v. Shinseki*, 24 Vet.App. 259, 272 (2011) (noting that private medical record had to be weighed against other evidence in record); *Roberts*, *supra*. Moreover, to the extent Ms. McNair contends that witness testimony necessarily carries greater weight than documents, she is mistaken. *E.g.*, *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948) (giving little weight to testimony in conflict with contemporaneous documents). Nonetheless, this does not relieve the Board of its duty to make credibility determinations and otherwise weigh all of the evidence submitted, including lay evidence, and to adequately explain the reasons or bases for its assignment of weight and ultimate determinations. *See Jandreau v. Nicholson,* 492 F.3d 1372, 1376 (Fed. Cir. 2007) (Board has duty to weigh and determine credibility of all evidence, and explain its findings in statement of reasons or bases).

Here, the Board essentially found that the preponderance of the evidence was against Ms. McNair's assertion that she was not informed that she might suffer from neuralgia as a result of the surgery, but the Board's statement of reasons or bases in support of its determination is inadequate. Its only stated basis for this finding is the bald statement that "based upon the evidence in this case a reasonable person could assume that the surgeon's detailed discussion addressing possible residual scarring includes associated neuralgic pain." No rationale is provided for concluding what a reasonable person could assume, frustrating judicial review. *Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").

Although remand generally is warranted because our review of the Board's findings is frustrated, *see Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its

---

[7] By referencing the consent form and the treatment note, we do not imply that there is no other evidence in the record pertaining to this issue.

determinations, or where the record is otherwise inadequate"), in this instance we must also address whether the failure to provide notice that neuralgia was a risk associated with surgery can constitute a minor deviation that does not defeat a finding that consent was informed. This is required because if such failure can be deemed minor, and if the Board properly found that it was, Ms. McNair's basis for claiming that her consent was not informed would fail, and remand would not be warranted. 38 U.S.C. § 7261(b)(2) (Court must consider rule of prejudicial error); *Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004) (same); *cf. Valiao v. Principi*, 17 Vet.App. 229, 232 (2003) (under the prejudicial error rule, remand is unnecessary "where the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision").

## B. *Minor Deviations Immaterial Under the Circumstances of a Case*

The Board decision on appeal states that any failure to document neuralgia was a minor deviation that was immaterial under the circumstances of this case. However, the Board failed to provide a rationale for this determination or explain why not mentioning neuralgia would constitute such a minor deviation. In response to questioning at oral argument, the Secretary stated that he viewed 38 C.F.R. § 3.361(d)(1)(ii) to mean the failure to advise a patient about a reasonably foreseeable consequence of treatment is a minor, nonmaterial deviation if a reasonable person under the circumstances would have consented to the treatment anyway.

When the Secretary offers an interpretation of his own regulation for the first time in litigation, that interpretation generally is entitled to deference "'as long as there is no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment.'" *Singleton v. Shinseki*, 23 Vet.App. 376, 379 (2010) (quoting *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1364 (Fed. Cir. 2005)) (internal quotation marks omitted); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *Reizenstein v. Shinseki*, 583 F.3d 1331 (Fed. Cir. 2009) (noting that, generally, an "agency's construction of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation"). Here, a fair reading of the regulation and the Secretary's stated understanding of the regulation when promulgated, 69 Fed. Reg. 46,426, 46,429 (Aug. 3, 2004) ("[T]he provisions of

§ 3.361(d)(1) are intended merely to restate, more simply and clearly, the [common law] standards governing determinations of negligence."), support the Secretary's interpretation presented during oral argument and, for the reasons stated below, we find this interpretation to be a reasonable application of the statute. 38 U.S.C. § 7261(a)(1) (questions of law are reviewed de novo); *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law . . . ."); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *Forshey v. Principi*, 284 F.3d 1335, 1356 (Fed. Cir. 2002) ("[W]e may decide to apply the correct law even if the parties do not argue it, if an issue is properly before this court.").

The text of § 3.361(d)(1)(ii) and its placement in the overall regulatory scheme demonstrate that the term "minor deviations" includes substantive as well as technical or procedural errors. *See Buczynski v. Shinseki*, 24 Vet.App. 221, 227 (2009) (noting that regulatory interpretation focuses on the regulatory text as well as the overall structure of the regulatory provisions). The regulation states that a finding of informed consent will not be defeated by a minor deviation that is "immaterial under the circumstances of a case." 38 C.F.R. § 3.361(d)(1)(ii). With regard to substantial compliance and minor deviations, § 3.361(d)(1)(ii) refers twice to § 17.32 as a whole, which contains both procedural and substantive requirements. *Compare* 38 C.F.R. § 17.32(d) ("Documentation of informed consent."), *with* 38 C.F.R. § 17.32(c) ("General requirements for informed consent."). The cross reference to both procedural and substantive requirements supports the conclusion that even a failure to comply with a substantive requirement could, under some circumstances, constitute a minor, immaterial deviation. *See Buczynski, supra* (noting that specific limitations of regulatory provisions generally are noted if intended).

This interpretation also is consistent with common law principles that form the basis of § 3.361(d)(1), as stated by the Secretary when he promulgated this regulation. *See* 69 Fed. Reg. at 46,429. Pertinent hereto, common law generally holds that "the test for determining whether a particular peril must be divulged is its materiality to the patient's decision." *Canterbury*, 464 F.2d

10

at 791; *see also Canesi v. Wilson*, 730 A.2d 805, 812 (N.J. 1999); *Getchell v. Mansfield*, 489 P.2d 953, 955-56 (Or. 1971).

The majority of jurisdictions also determine "materiality" based upon an objective standard that, at least in part, asks whether the potentially undisclosed risk is of the type that if known by a reasonable person under similar circumstances would cause that person not to have undergone treatment.[8] *See, e.g.*, *Bernard v. Char*, 903 P.2d 667 (Haw. 1995); *Canterbury*, 464 F.2d at 786-87; *K.A.C. v. Benson*, 527 N.W.2d 553, 561 (Minn. 1995); *Schreiber v. Physicians Ins. Co. of Wis.*, 588 N.W.2d 26, 33 (Wis. 1999); *Sherwood*, 805 P.2d at 465 ("Applying the objective test is fair to the patient because it requires consideration by the factfinder of what a reasonable person with all of the characteristics of the plaintiff would have done under the same circumstances . . . and is likewise fair to the physician-defendant because the physician is not placed in jeopardy of the patient's hindsight."). To answer this question, the adjudicator not only must look to the likelihood of an undisclosed risk materializing, but also recognize that some foreseeable risks may be minor when compared to the foreseeable consequences of continuing without undergoing the treatment. *See Smith v. Cotter*, 810 P.2d 1204, 1209 (Nev. 1991) (determining that the plaintiff's thyroid problem was a minor irritant when compared to the risk of permanent vocal cord paralysis).

In sum, given the regulatory text and structure as well as the history of the promulgation of § 3.361(d)(1)(ii) and the general common law understanding of informed consent, we agree with the Secretary's interpretation that the failure to advise a patient of a foreseeable risk can be considered a minor, immaterial deviation under the regulation if a reasonable person in similar circumstances would have proceeded with the medical treatment even if informed of the foreseeable risk. Of course, such an assessment is a factual one for the Board to make in the first instance. *Roberts*, 23 Vet.App. at 423.

---

[8] The minority of jurisdictions use a subjective standard to determine materiality, under which a patient must show that she herself (as opposed to a reasonable person in her position) would not have consented to the treatment had she been adequately informed. *Sherwood v. Carter*, 805 P.2d 452, 465 (Idaho 1991). There is no reason to believe that the Secretary intended to apply this position, *see e.g.*, 69 Fed. Reg. at 46,429, and the Court declines to adopt it, given the inherent difficulties it imposes on the finder-of-fact, as well as the possibility that a patient who dies as a result of a medical procedure will be foreclosed from any recovery because she cannot testify as to what her subjective belief was at the time of the procedure. *See Fain v. Smith*, 479 So.2d 1150 (Ala. 1985) (noting the inherent difficulties).

Here, the Board provided no discussion as to whether a reasonable person in Ms. McNair's situation would have proceeded with the surgery even if advised of the risk that she could suffer from neuralgia as a result of that surgery. Moreover, the Board did not discuss, and the record does not reflect, the consequences of proceeding with surgery versus foregoing surgery, which are key factors upon which one might evaluate whether a reasonable person would have proceeded with the surgery. In the absence of such determination and a properly developed record, or other explanation supporting the Board's bald conclusion, judicial review of this issue is frustrated. 38 U.S.C. § 7104(d)(1) (requiring a statement of reasons or bases in support of the Board's findings and conclusions on all material issues presented on the record); *Allday*, *supra*.

### *C. Remand*

Remand is warranted for the Board to address, in the first instance, and to develop, as needed,[9] facts related to the scope of information provided to Ms. McNair regarding the foreseeable risks of her treatment, the foreseeable consequences of failing to undergo treatment, and whether a reasonable person would have proceeded with the surgery even if advised of the risk of neuralgia pursuant to § 3.361(d)(1)(ii). *Tucker*, *supra*; *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991) (Court is not to conduct de novo factfinding but rather to remand the case for the Board to find facts in the first instance, subject to later review by Court). On remand, Ms. McNair may present, and the Board must consider, any additional evidence and argument in support of the matters remanded. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). These matters are to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

### IV. CONCLUSION

Upon consideration of the foregoing, the Board's January 22, 2009, decision is SET ASIDE and the matter REMANDED for adjudication consistent with this decision.

---

[9] Of note, the record reflects that Ms. McNair's representative requested that the Secretary obtain further information from the VA hospital regarding her informed consent but the Board found that any such effort would be futile because the evidence already was sufficient for an adequate determination.