# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 11-2694

GENE R. SCHERTZ, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 14, 2013                                    Decided September 26, 2013)

*Vladlen David Zvenyach*, of Washington, D.C., for the appellant.

*Purnima G. Boominathan*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Gayle E. Strommen*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge,* and PIETSCH and GREENBERG, *Judges*.

KASOLD, *Chief Judge*: Veteran Gene R. Schertz appeals through counsel a May 19, 2011, Board of Veterans' Appeals (Board) decision that denied him entitlement to compensation under 38 U.S.C. § 1151 for a T-12 anterior spinal infarction and partial paraplegia of the lower extremities (spinal cord impairment resulting in leg paralysis). On February 20, 2013, the Court affirmed the Board's decision in a single-judge memorandum decision. On March 10, 2013, Mr. Schertz filed a motion for reconsideration by the single judge or, in the alternative, panel review. The motion for panel review clarifies Mr. Schertz's arguments, which raise an issue of first impression. Accordingly, panel review is granted, the February 20, 2013, memorandum decision is withdrawn, and this decision is issued in its stead. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990); Court's Internal Operating Procedures, sec. III(a)(4). For the reasons stated below, the Court will set aside the Board's decision and remand the matter on appeal for further adjudication consistent with this decision.

## I. FACTS

Mr. Schertz served on active duty in the U.S. Navy from February 1959 to December 1962. On October 13, 2006, Mr. Schertz underwent aortic bifemoral bypass graft surgery at the Iowa City VA medical center (VAMC). Prior to the surgery, he signed an informed consent form and thus acknowledged that he understood that "known risks of this treatment/procedure" included "No guarantee of return of normal blood supply . . . . Inadequate blood supply to legs and/or pelvic structures requiring removal or amputation. No guarantee of return of normal function. Nerve or spinal cord damage from poor blood supply, possibly permanent . . . . Death." Record (R.) at 853. Mr. Schertz's wife testified in 2009 that she and her husband were also orally informed that his surgery could result in paralysis. *See* R. at 1467 ("[T]hey said somethin' about paralysis . . . . [W]hoever it was, I don't even remember[,] said 'Oh, now this probably happened maybe one time [ ] in a thousand or something, no big deal.' And so, you know, they did [ ] tell us what could happen but they just played it down.").

Six days after his procedure, Mr. Schertz was able to walk without difficulty and he was discharged from the VAMC. On October 24, 2006, Mr. Schertz was diagnosed with an infection and readmitted to the hospital for treatment. He was discharged four days later, and he was again walking without difficulty. On October 29, 2006, however, Mr. Schertz suddenly lost the ability to move his legs. The next day he was diagnosed with a spinal cord infarction and partial paralysis.

On December 19, 2006, Mr. Schertz filed a claim for entitlement to compensation under 38 U.S.C. § 1151 for spinal cord impairment and paralysis caused by his October 2006 surgery. During the processing of his claim, Dr. Yvonne Lucero, director of the Spinal Cord Rehabilitation Program at the Hines VAMC and one of Mr. Schertz's former care providers, opined in a March 2008 letter that "[i]t appears Mr. Schertz suffered a loss of blood flow to his spinal cord that resulted in cord damage and paraplegia. This presumptive loss of blood flow is a common sequelae, but not a wholly predictable outcome, of abdominal vascular disease and/or its[] surgical correction." R. at 1459. She added that "[w]hile his spinal cord impairment is permanent (as it is related to his vascular condition), this situation is not a routinely anticipated consequence of the vascular disease process, and he should be considered for service-connected benefits." R. at 1460.

Notably, the Board remanded Mr. Schertz's claim in November 2009 for, inter alia, an additional medical opinion. The Board requested that an examiner "<u>state whether the outcome of the [October 2006 surgery] was an event not reasonably foreseeable</u> . . . . <u>The examiner should also indicate whether the risk of spinal cord infarction was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures</u>." R. at 1452-53 (emphasis in original). In response to the Board's instructions, Dr. Donald DePinto, chief of surgery at Hines VAMC, opined in a May 2010 medical report that "[p]araplegia-paraparesis after aortobifemoral graft is an infrequent complication of less than 1% and is not emphasized prior to the operative procedure. The complication could have been foreseen; however, it would not normally be discussed in the preoperative discussion because of its low frequency." R. at 41.

In the decision on appeal, the Board denied Mr. Schertz entitlement to compensation under 38 U.S.C. § 1151 for spinal cord impairment and leg paralysis caused by his October 2006 surgery. The Board acknowledged that Mr. Schertz's additional disability resulted from his October 2006 surgery, but it found that (1) VA physicians did not commit negligence or a similar instance of fault, and that (2) the spinal cord impairment and paralysis were reasonably foreseeable complications of Mr. Schertz's surgery. In support of the latter finding, the Board noted that (1) Dr. Lucero opined that loss of blood flow is a common sequelae of the surgical correction of abdominal vascular disease, (2) Dr. DePinto found that paralysis was an infrequent complication, but could have been foreseen, and (3) Mr. Schertz was informed that spinal cord injury and paralysis[1] are known risks of the surgery.

## II. SECTION 1151 AND THE ISSUE PRESENTED

In 38 U.S.C. § 1151, Congress mandated that

(a) [c]ompensation . . . shall be awarded for a qualifying additional disability . . . in the same manner as if such additional disability . . . were service-connected. For purposes of this section, a disability . . . is a qualifying additional disability. . . if the disability . . . was not the result of the veteran's willful misconduct and –

---

[1] As noted above, the consent form specified "Nerve or spinal cord damage from poor blood supply, possibly permanent" as a risk of "treatment/procedure," and Mr. Schertz was orally notified that paralysis was a risk. R. at 853. The consent form also specified that paralysis was a "rare" complication of the application of anesthesia. R. at 852.

3

(1) the disability. . . was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility . . . , and the proximate cause of the disability or death was –

(A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or

(B) an event not reasonably foreseeable[.]

There is no dispute that Mr. Schertz's disability was caused by his surgery and did not result from his own misconduct. More specifically, he does not challenge the Board's conclusion that his additional disability did not result from "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault" by a VA care provider. 38 U.S.C. § 1151(a)(1)(A). His entire claim, therefore, rests on whether his disability was proximately caused by an "event not reasonably foreseeable." 38 U.S.C. § 1151(a)(1)(B)

As will be discussed in greater detail below, Congress did not further define the phrase "event not reasonably foreseeable." The Secretary responded by creating a regulatory test for adjudicators to apply when they must determine whether an event is not reasonably foreseeable. Pursuant to 38 C.F.R. § 3.361(d)(2) (2013),

> [w]hether the proximate cause of a veteran's additional disability . . . was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of § 17.32 of this chapter.[2]

The issue before the Court is whether the Secretary's regulation reasonably implements section 1151, and whether the Board properly applied the Secretary's regulation in this case.

---

[2] Pursuant to 38 C.F.R. § 17.32(c) (2013), when obtaining informed consent, a practitioner "must explain in language understandable to the patient or surrogate the nature of a proposed procedure or treatment" including the "reasonably foreseeable associated risks, complications, or side effects."

4

Mr. Schertz argues that under § 3.361(d)(2) whether an event is reasonably foreseeable is an entirely objective inquiry that rests on what a "reasonable health care provider would have foreseen." In his view, it is irrelevant whether his disability was actually foreseen by his care providers. It is also irrelevant, he asserts, that he and his wife had actual knowledge that his disability could result from his surgery. Consequently, he contends that the evidence discussed by the Board – including his wife's testimony, the portion of the informed consent form listing spinal cord impairment as a possible surgical complication, Dr. DePinto's statement that paralysis "could have been foreseen," and Dr. Lucero's statement that spinal cord impairment is not "routinely anticipated" – does not demonstrate that a "reasonable health care provider" would have foreseen that spinal cord impairment and paralysis would result from Mr. Schertz's surgery or discussed the risk of those complications while obtaining informed consent for Mr. Schertz's procedure. R. at 41, 1460. Rather, he believes that Dr. DePinto's statement that paralysis "would not normally be discussed in the preoperative discussion" establishes that a reasonable health care provider would not have disclosed the risk of paralysis as a consequence of Mr. Schertz's surgery. R. at 41.

Mr. Schertz also argues that Congress's decision to include the term "not reasonably foreseeable" in section 1151(a)(1) reflects its intent to compensate veterans for unexpected accidents resulting from medical treatment. He supports this assertion by citing to a 1990 VA General Counsel opinion in which the General Counsel stated that compensation is warranted for injuries resulting from accidents that occur while a veteran is under VA care. VA Gen. Coun. Prec. 99-90 [hereinafter OGC 99-90]. Finally, Mr. Schertz asserts that the Board failed to support its decision with an adequate statement of reasons or bases.

The Secretary agrees that § 3.361(d)(2) provides an objective "reasonable health care provider" standard, but he argues that the Board weighed the evidence and determined that a "reasonable health care provider" would have foreseen Mr. Schertz's additional disability. The Secretary asserts that the Board implicitly found that the informed consent form signed by Mr. Schertz was the most probative evidence in the record concerning what a reasonable health care provider would foresee. At oral argument, the Secretary supported this assertion by noting for the first time that the informed consent form in this case is a standard form devised by a team of

5

Veterans Health Administration (VHA) medical professionals and used by VA physicians nationwide who perform the procedure Mr. Schertz underwent. The Secretary also argues that Dr. DePinto did not directly state what a reasonable health care provider would have disclosed while obtaining informed consent for a procedure. R. at 41. The Secretary argues, however, that the Board's reliance on Dr. DePinto's opinion did not result in prejudicial error because the record contained enough evidence for the Board to apply the reasonable health care provider test.

Finally, the Secretary disputes Mr. Schertz's contention that Congress intended to compensate veterans for injuries caused by unexpected accidents that occurred while they were under VA's care. The Secretary argues that OGC 99-90 was specifically rejected by the Secretary when he promulgated § 3.361(d)(2).

## IV. ANALYSIS
### A. 38 U.S.C. § 1151(a)(1)(B)

Section 1151 authorizes the award of compensation where, inter alia, the proximate cause of a disability resulting from surgical treatment was "an event not reasonably foreseeable." Although the plain meaning of a statute generally must be given effect, *see Tallman v. Brown*, 7 Vet.App. 453, 460 (1995), the term "not reasonably foreseeable" is susceptible to multiple interpretations. It is not clear, for example, whether the reasonable foreseeablility of an event is governed by the frequency with which it occurs, the expectations of an informed patient, the expectations of an uninformed patient, the foresight of an average doctor, or some other factor. *See Tropf v. Nicholson*, 20 Vet.App. 317, 321 n.1 (2006) (noting that a statute is ambiguous when "the application of the ordinary meaning of the words and rules of construction . . . fails to answer the question at issue" (citing *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (ambiguity is a conclusion reached when the question presented is not answered "at the level of literal language"))); *see also LaAsmar v. Phelps Dodge Corp. Life Acc. Death & Dismem. & Dep. Life Ins. Plan*, 605 F.3d 789, 809 (10th Cir. 2010) (noting that the term "reasonable foreseeability" is "ambiguous" and could produce various outcomes "depending upon how broadly it is interpreted"); *Cook v. United States*, 2006 WL 3333068, at *7 (S.D.N.Y. 2006) (noting that the term "reasonably foreseeable" is "ambiguous" and "open to some interpretation").

Although it is clear that the 1996 amendment to section 1151 was intended to incorporate a fault requirement into the statute,[3] *see* 142 CONG. REC. S9932 (daily ed. Sept. 5, 1996) (amended section 1151 would require "fault as a precondition for entitlement to compensation")), and provide cost savings to offset the new authorization to compensate children of Vietnam veterans born with spina bifida, *see* H.R. CONF. REP. 104-812 at 83-84 (Sept. 20, 1996), Congress did not define or explain the phrase "not reasonably foreseeable" when that phrase was added to section 1151 with the other changes made in 1996, and we find nothing in the legislative history requiring any specific interpretation of the phrase "not reasonably foreseeable." *See* Pub. L. No. 104-204 (1996) (amending section 1151).

Although Mr. Schertz argues that OGC 99-90 sheds light on Congress's intention, that opinion addresses a regulation (38 C.F.R. § 3.358(c)(3) (1990)) that implemented the no-fault statute that Congress later amended, and neither the regulation nor the pre-1996 version of the statute used the term "not reasonably foreseeable."[4] If anything, Congress's decision to write "not reasonably foreseeable" rather than "accident" into the amended version of section 1151 indicates that Congress was not precluding interpretations that diverge from OGC 99-90. *See Shoshone Indian Tribe of Wind River Reservation v. United States*, 364 F.3d 1339, 1347 (Fed. Cir. 2004) ("[T]here exists a strong presumption that Congress expresses its intent through the language it chooses and that the choice of words in a statute is therefore deliberate and reflective." (internal quotation marks omitted)).

In sum, we find that the term "not reasonably foreseeable"may be interpreted in many ways and that Congress has not given the Secretary any explicit or implicit guidance to help it sift through competing interpretations. Thus, we turn to the Secretary's chosen standard for evaluating whether an event is reasonably foreseeable. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of

---

[3] The U.S. Supreme Court, in *Brown v. Gardner*, 513 U.S. 115, 122 (1994), held that the prior version of section 1151 did not require fault for compensation.

[4] OGC 99-90 interpreted 38 U.S.C. § 351 (1990), which was reconstituted in 1991 as 38 U.S.C. § 1151, *see* Pub. L. No. 102-83. It was that version of the statute that was reviewed in *Gardner*, *supra*.

the statute."); *see also* 38 U.S.C. § 501 (authorizing the Secretary to promulgate rules and regulations to carry out the laws administered by VA).

## B. 38 C.F.R. § 3.361(d)(2)

The plain wording of § 3.361(d)(2) states that the determination as to whether an event is not reasonably foreseeable is "based on what a reasonable health care provider would have foreseen." Such an event "need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided." *Id.* Further, "[i]n determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of § 17.32." § 3.361(d)(2). Notably, 38 C.F.R. § 17.32 requires the health care provider having primary responsibility for a patient to explain, inter alia, the "reasonably foreseeable associated risks" of the treatment.

As discussed above, other courts have observed that the phrase "reasonably foreseeable" is ambiguous and subject to multiple interpretations that depend on the point of view of the person who is acting reasonably. *See LaAsmar* and *Cook*, both *supra*; *see also Fire Ins. Exch. v. Diehl*, 450 Mich. 678 (Mich. 1996) (noting that the phrase "reasonably foreseeable" is "ambiguous," depending on whether the evaluation is based on the point of view of a child or adult). We find the Secretary's interpretation of an "event not reasonably foreseeable" to be well within the scope of the phrase and thus a permissible construction of section 1151. *See also Chevron, supra*.

As both parties agree, the Secretary clearly adopted an objective standard based on the "reasonable health care provider." This means that the actual foreseeability of an event by a treating physician, an expert, or any other health care provider, is not dispositive. The standard is what a "reasonable health care provider" would have considered to be an ordinary risk of treatment that would be disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32, which, as noted above, requires the primary health care provider to explain the reasonably foreseeable risks associated with the surgery or treatment being provided. Otherwise stated, merely because a treating physician, expert, or other health care provider  actually foresaw certain risks does not mean that a reasonable health care provider with primary care for the patient would have disclosed these risks.

For example, an extremely cautious treating physician may take the "kitchen sink approach," informing a patient of numerous risks, but such risks might still be considered "not reasonably foreseeable" under section 1151(a)(1)(B) and implementing regulation § 3.361(d)(2) if a reasonable health care provider primarily responsible for the patient would not have foreseen such risks or determined them subject to disclosure under § 17.32.

To be sure, contrary to Mr. Schertz's argument, what actually was foreseen by the treating physician is not wholly irrelevant of what a reasonable health care provider primarily responsible for the patient would have considered reasonably foreseeable and therefore disclosed to the patient. Medical professionals are presumed competent to do their job. *See Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011) (applying presumption of regularity to medical examiners' competence); *Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (Fed. Cir. 2009). If the Board determines (with explanation) that the treating physician primarily responsible for the patient acted in a manner consistent with how a reasonable health care provider confronted by the patient's case would have acted, then the scope of the informed consent actually provided by the treating physician is evidence to be weighed by the Board on the § 3.361(d)(2) question.

Finally, we note that the Secretary specifically considered adding the term "accident" to his regulation, but determined that doing so would reduce the clarity of the standard he crafted. *See* Additional Disability or Death Due to Hospital Care, Medical or Surgical Treatment, Examination, Training and Rehabilitation Services, or Compensated Work Therapy Program, 69 Fed. Reg. 46,426, 46,430 (Aug. 3, 2004) (noting commenter's suggestion that the term "accident" be equated with "an event that is not reasonably foreseeable," but concluding that "we do not believe the clarity of this rule would be improved by introducing additional qualitative but ambiguous terms"). Therefore, per the Secretary's regulation, determining whether an event was caused by an "accident" is not the test for determining whether an event was reasonably foreseeable. The test is driven wholly by how a reasonable health care provider would behave if asked to perform a certain procedure on a veteran with the same characteristics as the veteran in a given case.

### C. Board's Statement of Reasons or Bases

In support of its decision here on appeal, the Board noted that spinal cord impairment and paralysis were *actually* foreseen by the treating physician, and that Dr. DePinto commented that Mr.

9

Schertz's disability "could have been foreseen." R. at 41. But, as discussed above, actual foreseeability or possible foreseeability is not the standard. Succinctly stated, the Board failed to render a determination that a reasonable health care provider seeking to obtain informed consent would have disclosed the possibility of spinal cord impairment and paralysis as a reasonably foreseeable risk, §§ 3.361(d)(2), 17.32, and this failure renders the Board's statement inadequate for judicial review. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").

Although Mr. Schertz argues that Dr. DePinto's opinion – provided in response to the Board's 2009 remand request – constitutes the only direct evidence on the issue of what a "reasonable health care provider" would have disclosed to Mr. Schertz, the Board never addressed whether Dr. DePinto's opinion adequately conveyed whether a reasonable health care provider with primary responsibility for the appellant's surgery would have foreseen the appellant's spinal cord injury and resulting paralysis. Additionally, we observe that the Board failed to address that portion of Dr. DePinto's statement that paralysis "would not normally be discussed in the preoperative discussion," further rendering its statement inadequate for judicial review. R. at 41; *see Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (Board must provide an adequate statement of reasons or bases "for its rejection of any material evidence favorable to the claimant"); *Allday*, *supra*.

Finally, although the Secretary argues that the informed consent form is evidence of the risks that a reasonable health care provider primarily reasonable for the patient would foresee and disclose to the patient – because it is a standard form devised by a team of Veterans Health Administration (VHA) medical professionals and used by VA physicians nationwide for this particular procedure – the record is devoid of evidence substantiating this argument, and the Board never cited this rationale, which was raised for the first time at oral argument. Moreover, even if the informed consent form is VHA's standard for a certain procedure, it still must be established that the form reflects what would be disclosed by the "reasonable health care provider" primarily responsible for the patient in a given case, which may vary depending on the patient's physical condition, age, or other individual factors. *See McNair v. Shinseki*, 25 Vet.App. 98, 104 (2011) (noting that informed

consent forms are predicated on "the unique characteristics of each patient and each medical procedure").

The Board's inadequate statement warrants remand. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

## V. CONCLUSION

Upon consideration of the foregoing, the May 19, 2011, Board decision is SET ASIDE and the matter REMANDED for further adjudication consistent with this decision.

11