# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-7165

PAT A. HATFIELD, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 12, 2021                              Decided March 8,  2021)

*Adam R. Luck*, of Dallas, Texas, for the appellant.

*James R. Drysdale*, with whom *William A. Hudson.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Jonathan G. Scruggs*, Acting Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and GREENBERG and ALLEN, *Judges*.

ALLEN, *Judge*: Veteran Archie A. Hatfield served the Nation honorably in the United States Army during World War II, from March 1944 to May 1945.[1] Unfortunately, he developed Hodgkin's disease after service. In January 1979, he died from pulmonary complications of radiation therapy he underwent at a VA medical center that was treating his Hodgkin's lymphoma.

Appellant, Pat A. Hatfield, is the veteran's surviving spouse. In this appeal, which is timely and over which the Court has jurisdiction,[2] she appeals an October 10, 2019, Board of Veterans' Appeals (Board) decision in which the Board denied her entitlement to dependency and indemnity compensation (DIC) benefits under 38 U.S.C. § 1151 for the veteran's death. Among various theories, appellant argues that she is entitled to benefits under section 1151 because VA failed to inform her husband of the risks of developing pulmonary complications as a result of radiation treatment such that he could not provide informed consent to this medical treatment. This appeal was referred to a panel of the Court, with oral argument, principally to address whether the rule this Court articulated in *McNair v. Shinseki*—that deviations from the informed consent

---

[1] Record (R.) at 1192.

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

requirements of 38 C.F.R. § 17.32 are minor and immaterial if a reasonable person in similar circumstances would have proceeded with the medical treatment even if informed of the foreseeable risk[3]—applies to a situation where VA did not obtain informed consent before administering a given treatment. The Board applied *McNair* and concluded that no reasonable person would have declined the radiation treatment. Today, we hold that *McNair* applies only when VA has attempted to obtain informed consent but obtains consent that contains some defect. *McNair* does not apply where, as here, VA does not obtain consent at all. As we explain, because the Board performed all the necessary factfinding, once we remove the Board's legal error, we find only one possible outcome: appellant is entitled to the benefits she seeks. Therefore, we will reverse the Board's decision denying appellant entitlement to benefits under section 1151 and remand this matter for the assignment of an effective date for those benefits and for any other actions necessary to effectuate the award of benefits.

## I. BACKGROUND

In July 1978, the veteran was diagnosed with Stage 2B Hodgkin's disease at a VA facility.[4] His Hodgkin's disease manifested into a large mass inside the right chest wall of his lungs.[5] His VA treating physician proposed radiation therapy as the initial treatment to reduce the size of the tumor. From September 28, 1978, to November 14, 1978, the veteran underwent radiation therapy and follow-up care at a VA hospital.[6] As we will discuss in more detail below, the veteran's medical records contain no evidence of documented informed consent for radiation therapy.

Though radiation therapy successfully eliminated the veteran's Hodgkin's disease,[7] the therapy produced adverse side effects.[8] He began experiencing severe pulmonary complications soon after completing the course of his radiation treatment.[9] He was readmitted to a VA hospital

---

[3] 25 Vet.App. 98, 100 (2011).

[4] R. at 1595.

[5] R. at 1593.

[6] R. at 1550-51, 1587.

[7] R. at 1550-51.

[8] R. at 1587.

[9] *Id.*

on December 9, 1978, where VA attempted to treat his radiation-induced pneumonitis.[10] The veteran did not respond well to follow-up care.[11] His pulmonary complications worsened, and he died on January 3, 1979, from cardiac arrest and radiation-induced pulmonary fibrosis.[12]

On January 9, 1979, appellant filed a claim seeking DIC and death pension benefits based on the veteran's death,[13] commencing a very long procedural history. VA obtained a May 1979 postmortem VA medical opinion in which the examiner found that VA had provided an appropriate treatment plan and standard of care.[14] The VA examiner acknowledged radiation pneumonitis as a predictable result of radiation therapy, but noted that the rate at which patients experience such symptoms could vary as much as up to 50%.[15] In a June 1979 rating decision, the regional office (RO) denied appellant death benefits under 38 U.S.C. § 351 (now 38 U.S.C. § 1151[16]) based on the May 1979 VA examiner's opinion that the veteran's death was not due to VA's negligence.[17]

Appellant appealed the 1979 rating decision to the Board.[18] The Board remanded the case for VA to procure the veteran's complete medical records folder[19] and requested an independent medical opinion to address both the standard of care provided to the veteran and whether his pulmonary complications following radiation therapy were either expected or unforeseen.[20] The resulting August 1980 independent medical examiner's report echoed much of the May 1979 VA examiner's opinions, particularly that the veteran's radiation therapy was administered properly

---

[10] R. at 1591.

[11] R. at 1587.

[12] R. at 1613.

[13] R. at 1609-12.

[14] R. at 1550-51.

[15] R. at 1551.

[16] We will refer to this provision as "section 1151" even when referring to what was section 315 prior to recodification.

[17] R. at 1547.

[18] R. at 1540.

[19] R. at 1520-21.

[20] R. at 1488-89.

and that in Hodgkin's disease patients who have undergone radiation therapy, fatal radiation pneumonitis is an unusual but well-recognized complication.[21]

In October 1980, the Board issued a decision continuing to deny appellant's claims under section 1151.[22] Among other things, the Board made factual findings addressing several theories of entitlement to benefits under section 1151. Specifically, the Board found that the veteran's pulmonary fibrosis was neither due to the "carelessness, negligence, lack of proper skill, error in judgment, or a similar instance of indicated fault on the part of [VA]" nor "an unforeseen or untoward event associated with treatment administered at [VA] facilities."[23] Appellant did not appeal that decision, so it became final.

On January 2, 1989, appellant filed a new application in an attempt to reopen her claim for DIC benefits under section 1151.[24] No subsequent correspondence between appellant and VA occurred until September 28, 1991, when appellant again filed a claim for DIC benefits.[25] Thereafter, she made several subsequent attempts to reopen her claim,[26] for which she received VA notification letters requiring "new and material evidence" to warrant reopening.[27] It appears that appellant did not submit new and material evidence to advance these DIC claims she filed from 1991 to 2000. For that reason, none of the DIC claims she filed between 1991 to 2000 remained active, and eventually, VA administratively closed them.

Finally, on July 20, 2010, appellant filed another application to reopen her claim for DIC benefits under section 1151.[28] The decision on appeal derives from this July 2010 application. The bulk of appellant's Board decisions also stem from the July 2010 filing—totaling eight Board

---

[21] R. at 1474-78.

[22] R. at 1453-68.

[23] R. at 1467.

[24] R. at 1447-50.

[25] R. at 1439-42 ("My husband had Hodgkin[']s disease. The VA hospital did not check his blood until they already gave him radiation treatments.").

[26] See R. at 1439-42 (Sept. 1991), 1421-24 (Aug. 1996), 1412-16 (Nov. 2000).

[27] R. at 1443 (Feb. 199), 1425 (Feb. 1992), 1418 (Sept. 1996), 1412-16 (Jan. 2000).

[28] R. at 1374-83 (July 2010).

decisions,[29] including five in which the Board remanded the claim.[30] Appellant appealed to this Court twice, resulting in the Court remanding appellant's case in both instances.[31] Appellant's claim was reopened in April 2018 when the Board found it had received new and material evidence to warrant reopening.[32] This April 2018 reopening is important to the appeal before us[33] because it triggers the applicability of 38 C.F.R. § 3.361.[34] We end our summary of case background by repeating that since appellant attempted to reopen her section 1151 claim in 2010, the Board issued eight related decisions on this matter.[35] And, as we said, since 2010 appellant's claim has also been before the Court twice.[36] We find it particularly appropriate that, as we explain below, appellant's long march through the VA system is finally coming to an end.

## II. PARTIES' POSITIONS

Appellant raises several arguments asserting error in the Board decision on appeal. For purposes of this decision, we must address only two of her arguments.[37] First, she argues that the Board erred in determining that informed consent was obtained because it misapplied both 38 C.F.R. §§ 17.32 and 3.361 as well as our decision in *McNair*.[38] Appellant asserts that VA obtained

---

[29] R. at 835-42 (Feb. 2013), 718-24 (Sept. 2013), 556-72 (Feb. 2014), 369-73 (Dec. 2015), 328-46 (July 2016), 188-98 (Apr. 2018), 103-05 (Jan. 2019), 4-20 (Oct. 2019).

[30] R. at 835-42 (Feb. 2013), 718-24 (Sept. 2013), 369-73 (Dec. 2015), 188-98 (Apr. 2018), 103-05 (Jan. 2019).

[31] R. at 443-46, 297-301.

[32] R. at 188-98.

[33] *Id.*

[34] R. at 10 ("38 C.F.R. § 3.361(a)(1) applies to claims received by VA on [or] after October 1, 1997, including claims to reopen."); *see* 38 C.F.R. § 3.361(a)(1) (stating that reopened claims under section 1151 received by VA on or after October 1, 1997, are subject to § 3.361). Based on the plain language of 38 C.F.R. § 3.361, the Board correctly applied the current consent requirement because the claim was reopened in 2018 when the regulation was in place. *See* R. at 188-89 (appellant's section 1151 claim was reopened in April 2018). We note the parties do not dispute the applicability of § 3.361 to appellant's case.

[35] R. at 835-42 (Feb. 2013), 718-24 (Sept. 2013), 556-72 (Feb. 2014), 369-73 (Dec. 2015), 328-46 (July 2016), 188-98 (Apr. 2018), 103-05 (Jan. 2019), 4-20 (Oct. 1980).

[36] R. at 443-46 (June 2015), 297-301 (Nov. 2017).

[37] Appellant raises two additional arguments that, given the grounds for our decision here, we do not address. She argues that the Board misapplied § 3.361(d)(2) when it found that the veteran's death was an event not reasonably foreseeable. She also argues that the Board's credibility findings concerning certain lay statements she had submitted are not supported by an adequate statement of reasons or bases. Neither of these arguments could lead to greater relief than we provide in our decision today, so we leave them to the side.

[38] Appellant's Brief (Br.) at 11-18.

5

no informed consent and as a matter of law such a lack of consent satisfies the proximate causation requirement of § 3.361(d)(1)(ii).[39] She contends the Board erred when it used *McNair* to establish consent instead of curing consent that was otherwise defective. Appellant seeks reversal on this basis.[40]

Second, appellant argues that the Board erred in finding no pending issues remaining from the time of the 1980 Board decision.[41] Specifically, she contends that the October 1980 Board decision denying her claim did not address whether the quickness of the veteran's death was an unforeseeable event.[42]

The Secretary argues that the Board correctly applied the objective reasonable-person test set forth in *McNair* because no reasonable person in the veteran's situation would have opted to forego radiation treatment.[43] Essentially, the Secretary maintains that if the Board finds a lack of documentation of informed consent, then *McNair*'s reasonable-patient standard applies in assessing whether VA had obtained informed consent.[44]

Regarding the October 1980 Board decision, the Secretary argues that the Board clearly found at that time that the veteran's pneumonitis was not "an unforeseen or untoward event" associated with the veteran's radiation therapy,[45] and, therefore, the Board adequately adjudicated all pending issues in its October 1980 decision.[46]

### III. ANALYSIS

Our analysis proceeds as follows: We will first address appellant's claim for compensation under section 1151 based on VA's failure to obtain the veteran's informed consent concerning the risks associated with the radiation treatment used to treat his Hodgkin's disease. We will explain

---

[39] *Id.* at 11-18.

[40] *Id.* at 11, 13.

[41] *Id.* at 25.

[42] R. at 26.

[43] Secretary's Br. at 18.

[44] *Id.* The Secretary reiterates this position during oral argument. *See* Oral Argument at 33:47-35:03, *Hatfield v. McDonough*, U.S. Vet. App. No. 19-7165, (oral argument held Jan. 12, 2021), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

[45] Secretary's Br. at 27 (citing R. at 1467).

[46] *Id.* at 27-28.

why, by applying *McNair* to excuse VA's failure to obtain informed consent, the Board legally erred in denying entitlement to section 1151 benefits.  Once that legal error is removed from the equation, we will explain why the Board's factual findings lead to only one possible result: reversal and an order to award the benefits appellant seeks. We will remand the matter for VA to assign an effective date for the award and to take any other action required to effectuate the award of these benefits.

Second, we will address appellant's assertion that the Board's October 1980 decision did not adjudicate appellant's arguments relating to the foreseeability of the veteran's death. We must address that matter because, if the foreseeability issue remains pending, appellant could potentially obtain an effective date earlier than that she would be entitled to based on the informed consent argument. We will explain why the Board did not err when it concluded that no issues remained pending and unadjudicated after the 1980 decision. So, we will affirm that portion of the decision before us on appeal.

## A.  Section 1151 and Lack of Informed Consent

### 1. The Statutory and Regulatory Structure

We begin with the statutory language. Section 1151(a) states, in pertinent part:

> Compensation under this chapter … shall be awarded for a qualifying additional disability or…death of a veteran … if the disability or death was not the result of the veteran's willful misconduct and … the disability or death was caused by [VA action], … and the proximate cause of the disability or death was … carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of [VA] in furnishing the hospital care, medical or surgical treatment, or examination ….

Statutory interpretation is a pure question of law that the Court reviews de novo.[47] The basics of statutory interpretation are well established. "In determining the meaning of a statutory provision, 'we look first to its language, giving the words used their ordinary meaning.'"[48] "Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands

---

[47] *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

[48] *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012); *see Artis v. District of Columbia*, _ U.S. _, _,138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).

as written, not to supplant those commands with others it may prefer."[49] If the Court concludes that Congress's intent is clear, we end our inquiry and give effect to that intent.[50]

In interpreting the meaning of section 1151(a), we are guided by the Federal Circuit's analysis in *Viegas v. Shinseki*, which provides a useful checklist of sorts for what is required to show entitlement to benefits under this statute.[51] In *Viegas*, the Federal Circuit summarized the three main requirements a claimant must establish for entitlement to benefits under section 1151. First, the veteran must experience a qualifying additional disability or death that was not the result of the veteran's willful misconduct. Second, the additional disability or death must have been caused by VA medical treatment, care, or examination (an actual or "but for" causation requirement). Finally, the proximate cause of the veteran's additional disability or death must be "carelessness, negligence, lack of proper skill, error in judgment, or similar instances of fault on the part" of VA or "an event not reasonably foreseeable."[52]

Here, there is no dispute that the veteran's pneumonitis was an additional disability resulting from VA's radiation treatment (and not from his own willful misconduct). So, the first element for establishing entitlement to benefits under section 1151 is satisfied here. Likewise, no one disputes that the veteran's pneumonitis and resulting death were actually caused by radiation treatment administered by VA. And that means the second element is established as well.

This leaves only the disputed proximate causation element. Congress did not define "proximate causation" in the statute; however, the Secretary implemented Congress's directive for proximate causation through 38 C.F.R. § 3.361(d).[53] Regulatory interpretation, like statutory interpretation, "begins with the language of the regulation, the plain meaning of which is derived from its text and its structure."[54] If the plain meaning of § 3.361(d) is clear from its text and structure, then that meaning controls and that is the end of the matter.[55] The Court reviews the

---

[49] *SAS Inst., Inc. v. Iancu*, _ U.S. _, _, 138 S. Ct. 1348, 1355 (2018).

[50] *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).
[51] 705 F.3d 1374, 1377 (Fed. Cir. 2013).

[52] 38 U.S.C. § 1151(a).

[53] 38 C.F.R. § 3.361(a)(1).

[54] *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (stating that "[t]he starting point in interpreting a statute [or regulation] is its language").

[55] *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006).

8

interpretation of regulations de novo as well.[56] Understanding both the structure and content of § 3.361 is critical to resolving this appeal. Accordingly, we describe the regulation in some detail.

Section 3.361(d) sets forth the three scenarios in which veterans may establish proximate causation with regard to entitlement to section 1151 benefits. At issue before us is the first paragraph of § 3.361(d)(1), which essentially mimics 38 U.S.C. § 1151(a)(1)(A).[57] The paragraph provides that proximate causation can be established with a showing of "carelessness, negligence, lack of proper skill, error in judgment, or *similar instance of fault on VA's part* in furnishing hospital care, medical or surgical treatment, or examination caused for the additional disability or death." [58]

How does informed consent fit in here? The Court's decision in *Halcomb v. Shinseki* is instructive in that regard.[59] The *Halcomb* Court noted that under § 3.361(d)(1),

> [t]o establish that the proximate cause of a disability was . . . carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA, the claimant must show *either* (1) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (2) VA furnished the care, treatment, or examination without the veteran's informed consent.[[60]]

As *Halcomb* recognized, this regulatory subsection describes two scenarios that count as a "similar instance of fault" not explicitly set forth in the statute.[61] The plain language of subparagraphs 3.361(d)(1)(i) and (ii) further show that proximate causation is established when VA fails to

---

[56] *Id.* at 320; *see also Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004).

[57] 38 C.F.R. § 3.361(d) provides two additional means of establishing proximate cause under § 1151, independent of the terms of subsection 3.361(d)(1). Section 3.361(d)(2) provides that a claimant can establish proximate causation if a claimant suffered a qualifying additional disability or death that was caused by "an event not reasonably foreseeable" according to the applicable procedures in 38 C.F.R. § 17.32. Section 3.361(d)(3) concerns proximate causation in the context of a claimant's participation in a VA training, rehabilitation, or compensated work therapy program.

[58] 38 C.F.R. § 3.361(d)(1) (emphasis added). *Compare* § 3.361(d)(1), *with* 38 U.S.C. § 1151(a)(1)(A) (providing that a disability or death is a qualifying additional disability or qualifying death where "the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary, either by a Department employee or in a Department facility… and the proximate cause of the disability or death was—

(A) Carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination ….").

[59] 23 Vet.App. 234 (2009); *see* 38 C.F.R. § 3.361(d)(1).

[60] *Halcomb*, 23 Vet.App. at 238 (emphasis in original) (citing 38 C.F.R. § 3.361(d)(1)).

[61] *Id.* at 239.

exercise the expected standard of care of a reasonable health care provider *or*, as relevant here, when VA fails to obtain the veteran's informed consent based on the requirements of 38 C.F.R. § 17.32.[62] Because the regulatory provision concerning informed consent plays a significant role in this appeal, we set out § 3.361(d)(1)(ii) in its entirety. Section 3.361(d)(1)(ii) provides that proximate causation is established when

> (ii) VA furnished the hospital care, medical or surgical treatment, or examination without the veteran's or, in appropriate cases, the veteran's representative's informed consent. To determine whether there was informed consent, VA will consider whether the health care providers substantially complied with the requirements of § 17.32 of this chapter. Minor deviations from the requirements of § 17.32 of this chapter that are immaterial under the circumstances of a case will not defeat a finding of informed consent. Consent may be express (*i.e.*, given orally or in writing) or implied under the circumstances specified in § 17.32(b) of this chapter, as in emergency situations.

Particularly important in resolving this appeal are the first three sentences of § 3.361(d)(1)(ii). The first sentence provides that a lack of informed consent when VA furnishes medical care or treatment generally satisfies the proximate cause requirement for demonstrating entitlement to benefits under section 1151. The next sentence in subparagraph 3.361(d)(1)(ii) points to 38 C.F.R. § 17.32 as setting forth what is required to substantially comply with the informed consent obligation. The third sentence allows an exception to the informed consent requirements of § 17.32—namely, that "minor deviations" from the informed consent requirements of § 17.32 that are "immaterial" "will not defeat a finding of informed consent." In sum, in these three sentences this regulation provides that VA must obtain a patient's informed consent for medical treatment and a failure to do so establishes the proximate cause requirement (sentence 1); that the content of that informed consent is set out in § 17.32 (sentence 2); but that a defect in consent under § 17.32 can be forgiven if it is minor and immaterial, because any finding of informed consent will not vitiate a finding of consent under sentences 1 and 2 (sentence 3).

Now that we have established the meaning of the relevant provisions of 38 U.S.C. § 1151 and 38 C.F.R. § 3.361, we turn to the Board's error in applying *McNair*'s informed consent rule to appellant's case.

## 2. The Board's Error Concerning *McNair*

---

[62] *See* 38 C.F.R. § 3.361(d)(1)(i)-(ii).

We begin by recounting what the Board says about informed consent generally because it frames how the Board approached appellant's claim:

> [I]nformed consent can be established through evidence of a document signed by the patient, or his representative, that indicates that the practitioner explained the proposed procedure, its benefits and reasonably foreseeable associated risks and the veteran consent[ed] to proceeding with the treatment, *or* by evidence that a reasonable person in similar circumstances would have proceeded with the medical treatment even if informed of the foreseeable risk. *See McNair v. Shinseki.*[63]

So, the Board understood that there were two ways of establishing informed consent. According to the Board, one could first establish informed consent by substantially complying with the requirements of § 17.32. This is entirely correct because that is what the first and second sentences of § 3.361(d)(1)(ii) unambiguously state. And when the Board used the word "or," the Board then provided a second, distinct means for establishing informed consent. That second way arises if a reasonable person in circumstances similar to those of the veteran (i.e., the patient) would not have refused the treatment even if informed of the risk of the complication the veteran experienced. As the Board notes via its citation, this is our rule from *McNair*. It is this second, alternative means of establishing informed consent that presents the problem, because by embedding this second means in its decision the Board functionally adds an alternative exception to the informed consent requirements of § 17.32. The Board then repeats the analytical structure above twice more, leaving no doubt about its approach.[64]

In employing *McNair*'s rule to create another means to find consent, the Board commits legal error. Neither the plain language of § 3.361 nor the accompanying informed consent requirements of § 17.32 contemplate the alternative exception the Board crafts as a means to *find* informed consent. As we said, the plain language of the first two sentences of § 3.361(d)(1)(ii) provides that a lack of informed consent substantially complying with § 17.32 establishes proximate causation. The third sentence (the one at issue in *McNair*) provides an exception to defective consent when the defect is a minor deviation from § 17.32's requirements. But that third

---

[63] R. at 16 (emphasis added).

[64] *See* R. at 17 ("Although there is no evidence that the Veteran signed an informed consent to radiation treatment and its potential risks, the clinician opined that no reasonable patient would have opted to forego the radiation treatment."); *see also* R. at 17-18 ("Moreover, regarding informed consent, although there is no evidence that the Veteran signed an informed consent to radiation treatment and its potential risks, no reasonable patient would have opted to forego the radiation treatment provided by VA.").

sentence does not create another means to find consent in the first place. And nothing in *McNair* suggests it does. We'll now explain in more detail our reasoning for reaching that conclusion.

We begin with *McNair*.[65] In *McNair*, the Court considered whether VA's failure to inform a patient about a potential adverse side effect, which the patient suffered as a result of her VA-provided mammoplasty, constituted a minor deviation from the requirements of § 17.32. Critically important, in *McNair*, the veteran provided informed consent via a signed informed consent form for mammoplasty.[66] As a result of the surgery, the veteran developed neuralgia, which before her surgery was not disclosed as a potential risk. In other words, there was an attempt to provide informed consent under § 17.32, but the consent VA obtained was defective. Relying on the third sentence of § 3.361(d)(1)(ii), the Board concluded that VA's failure to warn the veteran about neuralgia was a minor deviation from the substantive requirements of informed consent, based on the Board's finding that VA had substantially complied with § 17.32.[67] The Court, too, focused on the third sentence of § 3.361(d)(1)(ii). In interpreting subsection (d)(1)(ii)'s language concerning "minor deviation," the Court held that VA's failure to inform a patient about a potential adverse effect did not defeat a finding of informed consent if a reasonable person faced with similar circumstances would have proceeded with the treatment.[68] As we discuss in detail below, the facts before us are different from those in *McNair*, because here there was no documentation of the veteran's informed consent at all. We conclude that *McNair* does not apply when there is no attempt to obtain consent (as opposed to where defective consent has been obtained). Therefore, the Board legally erred by applying the *McNair* minor-deviation standard to appellant's case.

First, the part of the regulation *McNair* addressed simply does not apply to the facts of appellant's case. We recite the regulatory language of § 3.361(d)(1)(ii) once more: "Minor

---

[65] We note that the *McNair* Court based at least a portion of its analysis on deference to the Secretary's interpretation of § 3.361 advanced during oral argument. *See McNair*, 25 Vet.App. at 102 ("[T]he Secretary asserted that minor and immaterial deviations under § 3.361(d)(1)(ii) include a failure to disclose a risk that, had it been known to a reasonable person in Ms. McNair's circumstances, would not have deterred a reasonable person from undergoing surgery."). Because neither appellant nor the Secretary has asked us to revisit the decision in *McNair* with reference to *Kisor v. Wilkie*, 588 U.S. _, 139 S. Ct. 2400 (2019) and its altering the standard governing judicial deference to an agency's regulatory interpretation, we assume *McNair* remains good law and will proceed accordingly. To be clear, we express no view on whether *Kisor* has undermined *McNair* in any respect.

[66] *McNair*, 25 Vet.App. at 100.

[67] *Id.* at 101.

[68] *Id.* at 100, 107.

12

deviations from the requirements of § 17.32 of this chapter that are immaterial under the circumstances of a case will not defeat a finding of informed consent." The key phrase is "will not defeat a finding of informed consent." Whether something is a "minor deviation" only matters when there has been a "finding of informed consent." That's what the regulation says and we are not at liberty to ignore it.[69] Here, and as we explore in more depth below, the Board expressly found no documentation of informed consent.[70] Unlike *McNair*, where VA attempted to obtain informed consent as evidenced by Ms. McNair's signed informed consent form, the Board, in the decision on appeal, made a factual finding that *no* informed consent was provided in connection with the veteran's radiation treatment.[71]

There is no way to read the plain language of § 3.361(d)(1)(ii) to mean that the "minor deviation" exception applies when there is no "finding of informed consent" in the first instance.[72] In other words, for us to consider whether there was a minor deviation from the requirements of § 17.32, there must first be a "finding of informed consent" to which we compare an alleged minor deviation. Because there is no finding of informed consent here, under the clear regulatory language the minor-deviation inquiry never arises. Indeed, that is precisely what the *McNair* Court articulated in its holding. The Court stated that VA's failure to warn a patient of a risk "does not defeat *a finding of informed consent* if a reasonable person in similar circumstances would have proceeded with the treatment anyway."[73] In sum, § 3.361(d)(1)(ii)'s minor-deviation exception and our rule in *McNair* addressing that exception do not apply when, as here, there is no finding of informed consent in the first place.

The Board's rule that one can *establish* informed consent via the minor-deviation exception also makes little practical sense. Such a rule would effectively make a finding of a lack of informed consent meaningless because the reasonable person standard from *McNair* could excuse any failure to document informed consent in almost every situation. That would be a remarkable outcome given the extraordinary detail VA provided in § 17.32. It would be akin to having the

---

[69] *See Atencio v. O'Rourke,* 30 Vet.App. 74, 82 (2018).

[70] R. at 5, 16, 17.

[71] *Id*. As we note below, this is a favorable finding by the Board that the Court may not review under *Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007).

[72] 38 C.F.R. § 3.361(d)(1)(ii).

[73] *McNair*, 25 Vet.App. at 100 (emphasis added).

exception to the rule eclipse the rule itself. We will not adopt an interpretation that would lead to such an absurd result.[74]

In sum, the Court holds that that the minor-deviation exception provided in § 3.361(d)(1)(ii) applies only when there has been a predicate finding of informed consent (as directed by the first sentence in that subparagraph) that is in substantial compliance with § 17.32's requirements (as contemplated under the second sentence). Furthermore, we hold that the *McNair* rule does not apply to situations where no informed consent was obtained or attempted. Thus, the Board legally erred in applying the third sentence of § 3.361(d)(1)(ii) and the reasonable person standard from *McNair* when it made no finding of an attempt to provide informed consent in substantial compliance with § 17.32. Simply put, the minor-deviation exception does not allow the Board to conjure informed consent when no attempt at obtaining consent can be demonstrated and, especially, when the Board itself makes a finding that there was no informed consent.

Now that we have identified error in the Board's application of the *McNair* rule in connection with § 3.361(d)(1)(ii), we must consider the appropriate remedy.

### 3. The Remedy: The Correct Application of the Law

In addressing the appropriate remedy, we reemphasize our starting point—the requirements for entitlement to benefits under section 1151: (1) The veteran must have experienced a qualifying additional disability or death that was not the result of the veteran's willful misconduct; (2) the additional disability or death must be caused by VA medical treatment, care, or examination (i.e., actual causation); and (3) the proximate cause of the veteran's additional disability or death was "carelessness, negligence, lack of proper skill, error in judgment, or similar instances of fault on the part" of VA or "an event not reasonably foreseeable" (i.e., proximate causation).[75] Here, the Board found that appellant meets the first two elements. In terms of the first element, the Board stated that "[in] this instance, the element of an additional qualifying disability or death is clearly established."[76] As for the second element, the Board recognized that the "[v]eteran died as a result

---

[74] *Atencio*, 30 Vet.App. at 83 (citing *United States v. Wilson*, 503 U.S. 329, 334 (1992) ("[A]bsurd results are to be avoided."); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (stating that "a statutory construction that causes absurd results is to be avoided if at all possible")) ("This is an absurd result, something courts should avoid in statutory and regulatory interpretation.").

[75] 38 U.S.C. § 1151(a); *Viegas*, 705 F.3d at 1377.

[76] R. at 15.

of…cardiac arrest due to radiation induced pulmonary fibrosis."[77] Because these are favorable factual findings, the Court may not review them.[78] As we discussed above, the Board's legal error pertained to the third element dealing with proximate causation.

We reiterate that 38 C.F.R. § 3.361(d)(1)(ii) means that a lack of informed consent for VA medical care or treatment is a means to establish proximate causation. In its decision, the Board adopted a legal rule under which one could either find consent through a signed consent form (in conformity with § 17.32 requirements) or, *if there is no signed informed consent*, then the *McNair* rule must apply. We have explained that the Board erred as a matter of law by using *McNair* and its interpretation of the minor-deviation exception as an alternative means to find informed consent.

The Board's failure to apply the correct law certainly warrants remand, but appellant seeks reversal.[79] "[W]here the Board has incorrectly applied the law, … [generally] a remand is the appropriate remedy."[80] However, reversal is proper "where the Board has performed the necessary fact-finding and explicitly weighed the evidence" and the Court "is left with the definite and firm conviction that a mistake has been committed."[81]

Reversal is appropriate here because the Board performed all the factfinding necessary to apply the law to the facts of appellant's appeal. As we noted, the Board unquestionably found that the first and second requirements for compensation were met. We also conclude it found that there was no attempt to obtain consent (as opposed to a situation such as that in *McNair*, one with defective consent).[82] The Board stated three times that it found no evidence of informed consent

---

[77] *Id.*

[78] *See Medrano*, 21 Vet.App. at 170.

[79] Appellant's Br. at 11, 13.

[80] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

[81] *See Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013); *Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004) (explaining that "reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision").

[82] We note that the Secretary appears to argue that this was a defective-consent case. The Secretary frames this argument with respect to his application of *McNair,* suggesting that appellant's statements concerning being told of a 95% success rate for radiation treatment in lengthening the duration of the veteran's life suggests that this was a defective consent case. *See* Secretary's Br. at 4. (citing R. at 1499 ("[t]he oncologist told me and my husband there was a 95% cure for [H]odgkins disease with proper treatment")). We are not persuaded by the Secretary's argument. The Board never addressed this statement in terms of assessing whether there was substantial compliance with § 17.32, which strongly suggests it did not view the matter as one of defective consent. In fact, the Board repeatedly noted there was nothing to show consent at all, a point we discuss in more detail in this section. There just is nothing to

documented in the record.[83] The lack of documentation of informed consent here underscores VA's failure to even attempt to comply with the requirements of § 17.32. In other words, the record does not show even a generic informed consent form (i.e., a type of documentation) that could potentially satisfy the basic documentation requirement under the regulations.[84]

It is also worth noting what the Board did *not* do with respect to the informed consent requirements of § 17.32. The Board cited § 17.32 and recognized that this section covered the general requirements for informed consent.[85] But the Board did not discuss the requirements or seek to apply them to the facts of this case. Instead, after cursorily mentioning § 17.32, the Board plunged straight to *McNair*.[86] We would not lightly assume the Board ignored such a facially relevant inquiry. It seems far more likely that the Board did not discuss § 17.32 and how it applied here because it concluded (erroneously as we have held today) that via the minor-deviation exception under *McNair* it could find consent in the absence of any attempt to comply with the requirements of § 17.32. The fact of the matter is that there is little room to read the Board decision as doing anything other than making a factual finding that there was no proper procurement of informed consent because VA did not document the informed consent process according to § 17.32. The Board thought that was not dispositive because of its erroneous view of the law. But that does not mean it did not make the finding of no consent. And that favorable finding is one we may not review.[87]

In the end, there is no factual development remaining for the Board to do. The Board found that appellant's husband had a qualifying disability, that this disability was actually caused by VA's actions, and that VA did not obtain informed consent. The lack of informed consent qualifies as proximate causation under VA's regulations. Therefore, all three elements necessary to establish

---

suggest that anyone considered this to be a case about defective consent before the Secretary's arguments to us. We decline the invitation to rewrite the history of this appeal.

[83] R. at 5 (finding that "there was no evidence that Veteran signed an informed consent to radiation treatment and its potential risks") 16, (stating that "[h]ere, there is no dispute that there is no informed consent document of record"), 17 (stating again that "there is no evidence that the Veteran signed an informed consent to radiation treatment and its potential risks").

[84] 38 C.F.R. § 17.32(d)(1) (stating that "[t]he informed consent process must be appropriately *documented* in the health record" (emphasis added)).

[85] *See* R. at 9.

[86] *Id.*

[87] *See Medrano*, 21 Vet.App. at 170; *see also Miller v. Wilkie*, 32 Vet.App. 249, 260 (2020) (noting that the Court can draw upon and review the Board's implicit findings of fact).

entitlement to section 1151 benefits are met. The Board erred in applying the *McNair* rule concerning "minor deviation" to appellant's case—where there was no consent at all (as opposed to defective consent). Once we set aside the Board's legal error and consider the remaining facts the Board favorably found, there is no conclusion other than that appellant is entitled to section 1151 benefits. Accordingly, we will reverse the Board's determination that appellant was not entitled to compensation under section 1151 for the cause of her husband's death and order that VA award her those benefits on remand.

## B. *Foreseeability and the 1980 Board Decision*

We now turn to appellant's argument centered on the October 1980 Board decision and the foreseeability of the veteran's complications from radiation therapy.[88] Appellant argues that in October 2019 the Board erred in finding that the Board in October 1980 had addressed the issue of foreseeability of the complications. of radiation treatment.[89] Despite our decision on informed consent, we address this argument because, if appellant were correct, she could potentially be entitled to an earlier effective date for the award of section 1151 benefits.

38 U.S.C. § 1151 also allows for proximate causation to be established if a veteran's additional disability or death was "an event not reasonably foreseeable."[90] We need not discuss what constitutes a foreseeable or unforeseeable event here because appellant's argument hinges on a simple procedural basis. That is, she argues that the 1980 Board decision did not address the foreseeability issue and asserts that the Board in that decision should have focused specifically on the suddenness of the veteran's adverse side effects from radiation therapy such as *sudden death* and not just the development of a pulmonary problem.[91]

We are unpersuaded by appellant's argument. The Board in the decision before us today found that there were no pending or unadjudicated issues from the 1980 Board decision, including any foreseeability issue.[92] The 2019 Board's finding is consistent with the 1980 decision and is not

---

[88] Appellant's Br. at 25.

[89] *Id.* (citing to R. at 7 ("[T]he theory of foreseeability is not pending (and unadjudicated) from the 1980 Board denial.")).

[90] 38 U.S.C. § 1151(a)(1)(B).

[91] Appellant's Br. at 26.

[92] R. at 7-8.

clearly wrong.[93] The 1980 Board determined that "[i]t had not been demonstrated that pulmonary fibrosis (or any other disease or injury present at the time of the veteran's death) was an unforeseen or untoward event associated with treatment administered at [VA]."[94] The 1980 Board clearly and specifically referred to the fact that pulmonary fibrosis was not unforeseen. It may be that the 1980 Board erred in *how* it addressed the issue (an issue about which we express no opinion), but making an error in deciding an issue is not the same as neglecting to decide it at all. In sum, given the 1980 Board decision's specific reference to the foreseeability issue, the Board here did not err in concluding that the foreseeability issue was adjudicated and therefore does not remain pending.[95]

## IV. CONCLUSION

After considering the parties' briefs, oral argument, the record, and the governing law, the Court REVERSES the October 10, 2019, Board decision that appellant was not entitled to benefits under 38 U.S.C. § 1151 and REMANDS the matter for the assignment of an appropriate effective date and for any other steps necessary to effectuate the award. The Court AFFIRMS the portion of the Board decision finding that there is no pending, unadjudicated issue from the 1980 Board decision with respect to foreseeability.

---

[93] R. at 7.

[94] R. at 8 (citing R. at 1467).

[95] We note that nothing precludes appellant from filing a motion to revise the 1980 Board decision based on clear and unmistakable error. *See Fugo v. Brown*, 6 Vet.App. 40, 44 (1993); 38 C.F.R. § 20.1404(b) (2020).